NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2056
_____

UNITED STATES OF AMERICA

v.

TRAVIS J. RUSS,
                    Appellant

_____

On Appeal from the District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1-12-cr-00325-001)
District Judge: Honorable William W. Caldwell
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 13, 2015

Before: MCKEE, Chief Judge, HARDIMAN, and SCIRICA, Circuit Judges

(Filed: April 15, 2015)

_____

OPINION[*]
_____

**SCIRICA**, *Circuit Judge*

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

From 2008 until his arrest in October 2012, Travis Russ and nine confederates broke into cars from Florida to Pennsylvania and stole purses, wallets, checkbooks, and identification information. They then forged and cashed the checks from the outermost lane, or "felony lane," of drive-through banks. A grand jury charged the ten "Felony Lane Gang" coconspirators, all of whom have since pled guilty and been sentenced, with conspiracy to commit bank fraud and wire fraud; bank fraud; wire fraud; and aggravated identify theft. Russ pled guilty to the conspiracy charge (18 U.S.C. § 1349), and the government agreed to dismiss the three other counts of indictment. The District Court sentenced Russ to 188 months' imprisonment. Russ appeals his sentence and challenges the enhancements for number of victims and amount of loss. We will affirm.[1]

*First:* Homeland Security Agent Paul Dormer investigated 90 Felony Lane Gang transactions involving Russ between August and October of 2012 and found 147 victims, from financial institutions to vehicle owners and identification holders. For the full duration of the conspiracy,[2] he concluded, victims would have numbered in the thousands. Given the number of victims identified for this three-month period, the duration of the scheme, and Russ's own testimony that there were "two [or] three hundred" victims, the court did not clearly err in applying a six-level enhancement for

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the interpretation of the Sentencing Guidelines de novo and factual findings for clear error. *E.g.*, *United States v. Fumo*, 655 F.3d 288, 309 (3d Cir. 2011).

[2] Whether Russ began participating in the conspiracy in 2008, as he contends, or a few years earlier, as codefendant Sylvester Joseph testified, the court properly concluded there was enough information to find Russ was actively involved in the conspiracy long enough to justify the conservatively-estimated enhancement.

250 or more victims, *see* U.S.S.G. § 2B1.1(b)(2)(C).

*Second:* Russ's argument that his sixteen-level enhancement for amount of loss exceeding $1 million was improperly calculated is without merit. To ascertain loss, the court "need only make a reasonable estimate," U.S.S.G. § 2B1.1(b) app. n.3(C), which, on "deeper analysis" of the defendant's "subjective intention," may be determined to equal the total *possible* loss, *see United States v. Geevers*, 226 F.3d 186, 192 (3d Cir. 2000). Here, Russ stated he and his codefendants would split the money evenly,[3] and that around $200,000 was his take alone. Codefendant Sylvester Joseph testified Russ told him he made roughly $1 million. And because the group was not always successful, the intended loss amount is greater still. Finally, Agent Dormer found the group earned, on average, $40,000 to $50,000 per trip, and concluded that, given the length of the conspiracy, the total loss amount "well exceeds a million dollars." The court specifically credited Agent Dormer's testimony and found that $1 million was "a conservative estimate." We find no error in the court's analysis.

Because the District Court committed no factfinding error for the purposes of the sentencing enhancements, we will affirm the judgment of conviction and sentence.

---

[3] There were nine other codefendants, but the number of participants involved in any particular Felony Lane Gang trip varied. The amount earned was split evenly among those participating in a given trip. Russ testified about a specific trip in June 2011 involving eight people. He said the money was divided evenly and that he personally obtained $44,000 in cash.